# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LEDON T. BROWN, | ) |
| | ) |
|           Plaintiff, | ) |
| | ) |
| v. | ) |
| | )    No. 09-2570-CM |
| | ) |
| CARGILL, INCORPORATED, | ) |
| | ) |
|           Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Ledon T. Brown brings this race discrimination case against his former employer, defendant Cargill, Incorporated, pursuant to 42 U.S.C. § 1981. Plaintiff, an African-American man, claims disparate treatment, hostile work environment, and retaliation. The case is before the court on Defendant's Motion for Summary Judgment (Doc. 19). For the following reasons, the court grants the motion in part and denies it in part.

**I.    Factual Background**[1]

Defendant owns and operates a mineral processing plant in Hutchinson, Kansas, commonly referred to as Cargill Salt. Defendant hired plaintiff as a forklift operator to work at Cargill Salt on or about December 20, 2007. Plaintiff was a "probationary" employee throughout his employment with defendant, meaning, among other things, that he was an "at will" employee.

On his first day of work, plaintiff reviewed Cargill's Policy Against Harassment with

---

[1] The parties agree on most of the facts. Where disputed, the court construes the facts in the light most favorable to plaintiff for purposes of this Memorandum and Order. The court has included only those facts which are relevant, material, and properly supported by the record.

Cargill's onsite Human Resources Administrator, Beverly Exposito. The policy provides certain procedures for reporting harassment, including informing the alleged harasser that his or her behavior is offensive and unwelcome and requesting that they stop such behavior. The employee is responsible for contacting an on-site Human Resources Manager, the Business Unit Human Resources Manager, or the Employee Relations Department if he or she cannot talk to the alleged harasser. The policy also provides addresses, phone numbers, and a web-site for employees to use as resources with respect to questions or concerns regarding Cargill's harassment policies.

At all relevant times during his employment with defendant, one of plaintiff's supervisors was Gary Canfield. Plaintiff was assigned to train with co-worker Larry Thacker, another forklift operator. Plaintiff alleges that Mr. Thacker commented to plaintiff that "black people don't work at Cargill."[2] Plaintiff alleges that he reported this statement to Mr. Canfield.[3] Plaintiff did not report the comment to anyone else in Cargill management or in human resources. Mr. Thacker did not make any other racially-related comments to plaintiff during plaintiff's tenure with Cargill, and no one else at Cargill ever made any racially related remarks to plaintiff during his tenure.

During his employment, Cargill gave plaintiff two performance evaluations in which it advised him, orally and in writing, of several deficiencies in his work. At the first review, on February 8, 2008, Mr. Canfield presented plaintiff with a handwritten list of "Improvement

---

[2] By way of affidavit, Mr. Thacker denies ever making this statement and notes that "[m]any African-Americans work at the Cargill salt facility where I work, so that statement would not even make sense." (Doc. 19-3, at 1.)

[3] By way of affidavit, Mr. Canfield denies that plaintiff ever told him that Mr. Thacker told him "black people don't work at Cargill." (Doc. 19-4, at 1.) Mr. Canfield also asserts that plaintiff complained to him only one time about his working relationship with Mr. Thacker, and during that conversation, plaintiff never said that the source of his problems with Mr. Thacker was in any way related to plaintiff's race. (*Id*.)

Opportunities." Plaintiff asserts that he told Mr. Canfield that many of the identified deficiencies were inaccurate.

At the second review on March 17 or 18, 2008, Mr. Canfield advised plaintiff that he was not efficient with the forklift. The written evaluation stated, among other things, that plaintiff had loaded un-scanned loads on February 18; that plaintiff could not operate the label system; and that plaintiff had trouble "making quality stacks and [also] damage[d] loads." (Doc. 20, at 13–14.) After plaintiff's second negative review, plaintiff knew that his "days were numbered" with the company. (Doc. 20, at 14; Doc. 19-2, at 33.)

On Monday, March 24, 2008, plaintiff made a formal written complaint concerning how he was treated to Ms. Exposito, Cargill's on-site human resources representative. Plaintiff also met with Ms. Exposito and went over the items that were listed in his written complaint. The written complaint stated that he was "not being trained in all aspects of the job," and that he had "ongoing problems" with Mr. Thacker and that he had complained to Mr. Canfield about Mr. Thacker's unspecified harassment of plaintiff. Plaintiff's written complaint did not state that plaintiff's ongoing problems with Mr. Thacker or Mr. Canfield were related to plaintiff's race. Indeed, plaintiff's written complaint did not mention his race in any way, or state that Mr. Thacker or Mr. Canfield were racist. Although plaintiff testified his oral conversation with Ms. Exposito covered the same issues as his complaint, plaintiff asserts that he orally specified to Ms. Exposito that the harassment was due to plaintiff's race.[4]

Two days after the meeting between plaintiff and Ms. Exposito, Ms. Exposito asked plaintiff

---

[4] By way of affidavit, Ms. Exposito denies that plaintiff ever told her, orally or in writing, that he thought he was being harassed or treated poorly because of his race. She maintains that he did not mention race at their meeting, and that if he had, her notes would have reflected that. (Doc. 19-1, at 2–3.) They did not. (Doc. 19-1, at 3; Doc. 26-3.)

to meet with her again. At this second meeting, Ms. Exposito advised plaintiff that she had found no evidence of wrongdoing by Mr. Thacker or Mr. Canfield. Plaintiff did not respond substantively; he simply thanked Ms. Exposito for her time and left her office.

The next day, on March 27, 2008, defendant terminated plaintiff's employment.

Plaintiff filed this three-count complaint alleging disparate treatment; hostile work environment; and retaliation.[5] In support of his contentions, he alleges that, in addition to the race-related comment, Mr. Thacker continued with a pattern of harassment against plaintiff which included yelling at plaintiff, leaving equipment in plaintiff's path, backing up the hot salt line that plaintiff was running, and failing to adequately train plaintiff.

When plaintiff complained to Mr. Canfield regarding his problems with Mr. Thacker and requested to be assigned to another employee for training or assigned to a different shift, Mr. Canfield took no remedial action. Throughout the course of his employment, plaintiff repeatedly requested to be trained in areas other than trucking. Plaintiff was briefly assigned to train on railcars on March 13, 2008. However, after only an hour of training, Mr. Canfield directed plaintiff to return to trucks. Plaintiff asserts that Mr. Canfield harrassed plaintiff about his hearing and about what shifts he was working.[6]

---

[5] For purposes of this motion, there does not appear to be any dispute regarding plaintiff's exhaustion of administrative remedies.

[6] According to plaintiff, on or about March 7, 2008, Mr. Canfield approached plaintiff and informed him that he could begin fourth shift beginning Monday, March 10, 2008. On March 10, plaintiff worked without incident. On March 11, Mr. Canfield called plaintiff at home during first shift alleging that plaintiff was supposed to be working and harassing plaintiff about his hearing. Later on March 11, 2008, Mr. Canfield told plaintiff he was going to be off that Wednesday and Thursday and should report to fourth shift on Friday. Wednesday afternoon, plaintiff reported to work for a mandatory meeting and then left under the understanding from Mr. Canfield that it was his day off. Mr. Canfield called a few hours later alleging that plaintiff was to be working and again harassing plaintiff regarding his hearing.

Plaintiff seeks damages in the form of back pay, front pay, loss of benefits, emotional distress and mental anguish. And because plaintiff alleges defendant acted with malice or with reckless indifference, he also seeks punitive damages.

On August 10, 2010, defendant filed this Motion for Summary Judgment (Doc. 19) including five exhibits and a Memorandum in Support (Doc. 20). Defendant argues it is entitled to summary judgment because (1) plaintiff cannot present direct or circumstantial evidence showing that any discrimination played a motivating part in the employment decisions at issue; (2) plaintiff cannot establish a *prima facie* case for any of these three claims; and (3) plaintiff cannot show that defendant's stated reason for terminating his employment—his poor performance—was a pretext for discrimination.

Defendant maintains that plaintiff was terminated due to performance deficiencies, *i.e.*, legitimate, non-discriminatory and non-retaliatory reasons, which included his inability to perform the forklift operation adequately. Indeed, defendant asserts (and plaintiff contests) that it reached the decision to terminate plaintiff between March 17 and March 21, 2008, but did not communicate its decision to plaintiff until March 27 because the plant manager, Mark Whitson, was out of town until then.

## II. Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III. Discussion

### A. Disparate Treatment

To prevail under a disparate treatment theory, a plaintiff must show, through either direct of indirect evidence, that the discrimination complained of was intentional. *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000). Proof of discriminatory motive may be inferred from the totality of the relevant facts, including the mere fact of differences in treatment. *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335, n.15 (1977).

Plaintiff asserts that he was treated less favorably than white employees in regard to discipline, the adequacy of his training and other terms of conditions of his employment, including his ultimate termination. He purports to proceed on a "mixed motive" theory.[7] Under this theory, plaintiff must prove that race discrimination played a motivating part in defendant's adverse employment actions. *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (holding that to proceed on a claim of disparate treatment, plaintiff must establish, among other things, that he suffered an adverse employment action); *see also Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1078 (10th Cir. 1998) (in a mixed motive case, same).[8]

---

[7] While plaintiff asserts that he intends to rely on a mixed-motive theory of proof, the court's focus at the summary judgment stage is not limited by that characterization; rather, the key at this juncture is whether plaintiff's evidence is sufficient to permit a reasonable jury to find either that discrimination was a "motivating factor" in the decision or that the employer's reason for the decision is unworthy of belief. *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1225 (10th Cir. 2008). In any event, the court notes that plaintiff, while urging a mixed-motive analysis, appears to offer only circumstantial evidence in support of his arguments, which generally triggers application of the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973) in Title VII and § 1981 cases. *See Maldonado v. City of Altus*, 433 F.3d 1294, 1307 (10th Cir. 2006) overruled on other grounds as recognized by *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 n.2 (10th Cir. 2006); *Baca v. Sklar*, 398 F.3d 1210, 1218 n. 3 (10th Cir. 2005).

[8] Here, plaintiff alleges that inadequate training, unfair and overly critical performance
(continued...)

Plaintiff relies on two types of circumstantial evidence. First, plaintiff points to Cargill's "false explanations" for the adverse action—specifically, Ms. Exposito's explanation that Cargill made the decision to terminate plaintiff's employment between March 17 and 21, 2008—before plaintiff made his formal written complaint. Plaintiff also points to Mr. Canfield's assertion that plaintiff was angry, made criminal threats, and used profanity when he was terminated, necessitating Mr. Canfield to file a police report over the incident. Plaintiff denies making any threats or acting inappropriately in any way. Plaintiff argues that a reasonable jury could accept plaintiff's version and infer from defendant's false explanations that defendant was covering up a discriminatory purpose.

Second, plaintiff offers circumstantial evidence that he was treated differently from other similarly situated employees. This appears in the form of notes from Ms. Exposito's investigation into plaintiff's complaint, in which Mr. James Price, plaintiff's co-worker, told Ms. Exposito that he thought plaintiff was being treated differently and that plaintiff was "being done wrong" by Mr. Thacker, and that "ever since [plaintiff] went to Canfield, he is being treated differently." (Doc. 25, at 7; Doc. 26-3, at 2–3.) Mr. Bob Lucas, another coworker, told Ms. Exposito that "Thacker won't help [plaintiff]"; [Mr. Thacker] won't show [plaintiff] anything on labeler and rail car"; and "[plaintiff] didn't get a fair shake on training." (Doc. 25, at 7; Doc. 26-3, at 3.) Plaintiff argues that, based on these statements, a reasonable jury could find that race discrimination played a motivating part in the adverse actions defendant took against plaintiff.

The court disagrees. Plaintiff has not presented evidence sufficient to create a genuine issue

---

[8] (...continued)
evaluations, and ultimate termination are the adverse actions supporting his claim. His briefing focuses primarily on his termination. For purposes of this order, the court assumes without deciding that plaintiff can establish that these acts constitute adverse employment actions.

of material fact regarding whether a discriminatory motive played a motivating part in the termination decision and/or other adverse employment decisions. Aside from the single alleged comment by Mr. Thacker, plaintiff has failed to direct the court to any evidence that would establish a genuine issue of material fact as to whether defendant discriminated against him *based on race*. With regard to a disparate treatment theory, plaintiff has not identified any statistics or evidence demonstrating that African-American employees were treated differently than Caucasian or other employees, or that any difference in Mr. Canfield or Mr. Thacker's treatment of plaintiff was based on his race as opposed to personality differences or some other facially neutral motivation. Indeed, plaintiff has testified that he is not aware of any similarly-situated Caucasian employees whom defendant treated more favorably than it treated him. Even assuming, without deciding, the truth and admissibility of plaintiff's proffered evidence, this evidence does not suggest that any difference in treatment was "'racially premised.'" *Teamsters*, 431 U.S. at 335 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 n.18 (1973)); *see also Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995) (holding that Fed. R. Civ. P. 56 precludes the use of inadmissible hearsay testimony in depositions submitted in opposition to summary judgment). Defendant is entitled to summary judgment on plaintiff's disparate treatment claim.

**B.    Hostile Work Environment Claim**

To prevail on a hostile work environment claim, plaintiff must establish that his work environment was hostile and that defendant is liable for the hostile environment. *Adler*, 144 F.3d at 672–73. An employer is liable for a hostile work environment when it had actual or constructive knowledge of the hostile work environment and did not adequately respond to notice of the harassment. *Ford v. West*, 222 F.3d 767, 775–76 (10th Cir. 2000); *Adler*, 144 F.3d at 673. Constructive knowledge exists when the harassment is so pervasive that the employer should have

known about it.  *Adler*, 144 F.3d at 675.  The harassment must be "'so egregious, numerous, and concentrated as to add up to a campaign of harassment.'"  *Id.* (*citing Baker v. Weyerhaeuser Co.*, 903 F.2d. 1342, 1346 (10th Cir. 1990)); *see Aramburu v. Boeing Co.*, 112 F.3d 1398, 1410 (10th Cir. 1997) (applying these standards to both § 1981 claims and Title VII claims).

Here, plaintiff alleges that Mr. Thacker made one race-related comment.  However, the parties agree that no one else at Cargill ever made any race-related comments to plaintiff.  And although plaintiff asserts that Mr. Thacker continued with a pattern of abusive and harrassing conduct against plaintiff, plaintiff does not offer evidence that would support an inference that this conduct was motivated by race.  Plaintiff apparently perceives every negative action as racially motivated.  But the evidence does not support this perception.  Plaintiff admits that Mr. Canfield and Mr. Thacker were unpopular and not well-liked at the plant.  He admits that many Caucasian Cargill employees had negative impressions of Mr. Thacker.  The facts in this case are facially neutral, not racially charged.  The single, ambiguous comment allegedly made by Mr. Thacker, a non-decision-making employee, that "black people don't work at Cargill" is insufficient to create a triable claim of hostile work environment.  There simply is not evidence of "egregious and numerous" incidents that would constitute a "campaign of harassment."  *Baker*, 903 F.2d. at 1346.  Defendant is entitled to judgment as a matter of law on plaintiff's claim of hostile work environment.

**C.     Retaliation**

To survive defendant's motion, plaintiff must present sufficient evidence from which a reasonable jury could conclude that retaliation was a motivating factor in the adverse actions[9] or

---

[9] Plaintiff again identifies inadequate training, unfair and overly critical performance evaluations, and ultimate termination as the adverse actions supporting his retaliation claim.  In the context of this claim, an action is "adverse" if "'it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Argo v. Blue Cross & Blue Shield of Kan.,*
(continued...)

from which a jury could reasonably conclude that defendant's proffered reasons for its actions are unworthy of belief. *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1225 (10th Cir. 2008).

Plaintiff relies in part on the Tenth Circuit's decision in *Marx v. Schnuck Markets, Inc.*, for the principle that "protected conduct closely followed by adverse action may justify an inference of retaliatory motive." 76 F.3d 324, 329 (10th Cir. 1996). According to plaintiff, the evidence in this case demonstrates a "close temporal proximity" between plaintiff's protected conduct and the adverse actions that he suffered. *Wright v. C & M Tire, Inc.*, 545 F. Supp. 2d 1191, 1204–05 (D. Kan. 2008). The court agrees. Here, plaintiff received a negative evaluation on March 17 or 18, 2008; he filed his written complaint on March 24 and met with Ms. Exposito that day. At this meeting he claims, by way of his own sworn affidavit, that he told Ms. Exposito that he believed that the harassment he was subjected to was due to his race. (Doc. 26-1, at 3.) He met again with Ms. Exposito on March 26, and was terminated on March 27.

Only plaintiff's own testimony suggests that he engaged in any protected opposition to discrimination. Merely complaining about an action—without complaining that it was race-based—is insufficient to qualify as "protected opposition." There is no dispute that the written complaint provided to Ms. Exposito did not mention race. But there is a dispute as to whether plaintiff orally relayed that he believed he was being discriminated against based on his race. And there is dispute about when defendant made its decision to terminate plaintiff, i.e., whether the decision was made before or after plaintiff filed his complaint. The court finds that a reasonable jury could conclude that plaintiff engaged in protected conduct, and that defendant's employment

---

[9] (...continued)
*Inc.*, 452 F.3d 1193, 1202 n.2 (10th Cir. 2006) (*quoting Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

decisions were retaliatory. While a reasonable jury could also find for defendant, the court cannot, as a matter of law, make that finding from the record before it. Defendant is not entitled to summary judgment on this claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 19) is granted in part and denied in part. Only plaintiff's claim for retaliation remains in the case.

Dated this 1st day of November 2010, at Kansas City, Kansas.

> **s/ Carlos Murguia**
> **CARLOS MURGUIA**
> **United States District Judge**